IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **RAYMOND E. LUMSDEN,** § | |
| **TDCJ No. 02109472,** § | |
| § | |
| v. § | **W-20-CV-113-ADA** |
| § | |
| § | |
| **LORIE DAVIS, et al.** § | |

## ORDER

Before the Court are Plaintiff Raymond E. Lumsden's complaints filed pursuant to 42 U.S.C. § 1983 (ECF No. 1)[1]; the Motions for Summary Judgment (ECF Nos. 10, 23) filed by Defendants Davis, Correll, Akwitti, Blakely, Clayton, Martinez, Smith, and Cockerham;[2] Plaintiff's Responses in Opposition (ECF Nos. 26-27); Plaintiff's Motions for Summary Judgment (ECF Nos. 33-34); Defendants' Response in Opposition (ECF No. 36); and Defendants' Second Motion for Protective Order (ECF No. 37). Lumsden is proceeding pro se and in forma pauperis. (ECF No. 5.) Upon careful consideration of the parties' motions, the Court grants Defendants' Motion for Summary Judgment, denies Lumsden's Motion for Summary Judgment, and dismisses as moot Defendants' Second Motion for Protective Order.

---

[1] The Court consolidated the instant complaint with the complaint Lumsden filed in case number W-20-cv-138-ADA. (ECF No. 12.) The Court will use "(No. 20-cv-138 ECF No. 1)" when citing to the consolidated complaint.
[2] Defendant Jane Cockerham's name is misspelled in Plaintiff's complaint ("Cockerman") and is changed to reflect the correct spelling. (ECF No. 23 at 1.)

1

## **I. Statement of the Case**

Lumsden is in custody at the Hughes Unit of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). Lumsden alleges that, after he complained that his winter coat was too small in October 2019, he was retaliated against by being falsely accused of winking at a correctional officer and then wrongly convicted of this offense. Lumsden's punishment consisted of a reduction in custodial status, a change in housing, and the temporary loss of telephone, recreation, and commissary privileges. Lumsden alleges that despite his conviction being reversed and removed from his record, he remains in disciplinary housing. He alleges defendants then violated TDCJ policy by re-issuing and re-hearing the winking disciplinary case where he was once again found guilty. He claims this was done in retaliation for his grievances and the filing of the instant civil rights complaint.

He further alleges that, in January 2020, he was found guilty in a different disciplinary matter, despite presenting evidence of his innocence, and that this conviction was also in retaliation for the reversal of the winking case. Finally, he alleges defendants have violated his Eighth Amendment rights by keeping him in housing that is loud, violent, filthy, and restrictive and by failing to supply him with a suitable mattress.

Lumsden claims the defendants conspired to retaliate and retaliated against him in violation of the First Amendment; they denied him due process in his disciplinary hearing in violation of the Fourteenth Amendment; his confinement in segregated housing violates the Fourteenth Amendment; and defendants have been deliberately indifferent to his medical needs in violation of the Eighth Amendment. Lumsden names the following

defendants in both their official and individual capacities: Lorie Davis, TDCJ Director; Adrian Correll, TDCJ Regional Director; Nick Clayton, Hughes Unit Assistant Warden; Chimdi Akwitti, Hughes Unit Assistant Warden; Captain Shannon S. Blakely; Captain Annette A. Martinez; Major Beau Smith; and Jane Cockerham. He seeks declaratory and injunctive relief and damages. (ECF No. 1.)

After Defendants filed a Motion to Dismiss (ECF No. 10), the Court consolidated this case with Cause No. 6:20-cv-00138-ADA and converted Defendants' motion to dismiss into a motion for summary judgment (ECF Nos. 12-13). Defendants thereafter filed supplemental briefing in support of their summary judgment motion, arguing they are entitled to Eleventh Amendment and qualified immunity. (ECF No. 23.) Lumsden filed a response in opposition (ECF Nos. 26-27), along with a summary judgment motion on his due process claim (ECF Nos. 33-35). Defendants filed a response in opposition to which Lumsden replied (ECF Nos. 36, 38). Finally, Defendants have filed a second motion for protective order, arguing that Lumsden's second request for admissions is largely duplicative of his first request, exceeds the maximum number of requests permitted by this Court's local rules, and is not related to qualified immunity. (ECF No. 37.) In response, Lumsden argues he is not harassing defendants who, he claims, are hiding something by not complying with his discovery requests. (ECF No. 39.)

## II. Factual Background

On October 10, 2019, Lumsden was issued a size 2XL winter coat, which was too small. He requested a size 5XL coat but his request was denied and he was told to "lose

3

some weight."[3] (ECF No. 1 at 3.) He immediately phoned his family about the issue, and a family member called Defendant Clayton that same day. Clayton attested that, after receiving the phone call from Lumsden's family member, he called Defendant Blakely, the Hughes Unit laundry manager, and asked her to see if Lumsden needed a larger coat. (ECF No. 23-1 at 2-3.) Blakely attested that she did not originally assign Lumsden the 2XL jacket and she could see it was too small and issued him a 5XL jacket. Blakely further attested that Lumsden thanked her for the new coat and then winked at her as he was leaving. To Blakely, Lumsden's behavior constituted attempting to establish a relationship with staff, a Level 2 offense, and she immediately told Lumsden he would receive a disciplinary case for it. (ECF No. 23-2 at 3.) Later that day Blakely filed the offense report (ECF No. 23-5 at 7), and also told Clayton about it (ECF No. 23-1 at 3).

Contrary to Blakely's account, Lumsden alleges he never winked at Blakely, and that she verbally assaulted him by saying "You big baby, having your mommy call and complain" and "You messed with the old bull, now you're going to get the horns." (ECF No. 1 at 3.) On October 11, 2019, Lumsden filed a grievance against Blakely, restating the above allegations and claiming she had retaliated against him because his family complained about the jacket to Clayton. The grievance was denied. (ECF No. 23-8 at 3-

---

[3] Lumsden's complaints were both verified under penalty of perjury and thus constitute competent summary judgment evidence. *See Lodge Music Hall, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (verified pleadings are competent summary judgment evidence when they are based on personal knowledge, set forth facts that would otherwise be admissible, and show affiant is competent to testify); *see also Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (same).

4

4.) Blakely attested that her decision to issue Lumsden a disciplinary case was not motivated by any of his grievances or lawsuits. (ECF No. 23-2 at 3.)

On October 16, Lumsden received formal notice of Blakely's offense report; he pleaded not guilty. (ECF No. 23-5 at 8.) A hearing was held on October 21 and the hearing officer was Defendant Martinez. Lumsden alleges he did not have counsel during the hearing and that Martinez told him to "keep his mouth shut . . . unless instructed to speak." (ECF No. 1 at 4.) Martinez found Lumsden guilty and restricted him to 40 days without commissary, telephone, or recreation privileges and reduced his custody level from S3 to S4. (ECF No. 23-5 at 11.)

That same day, Lumsden filed a grievance about the disciplinary hearing, arguing he was found guilty without any evidence. (ECF No. 23-5 at 4.) Lumsden alleges he was brought before the Unit Classification Committee (UCC) on October 25, 2019, where Defendant Smith assigned him to G4 classification despite the computer recommending G3. (ECF No. 1 at 4.) However, documents submitted by Defendants, and not refuted by Lumsden, show the computer recommendation was G4. (ECF No. 23-7 at 4.) On October 30, 2019, Defendant Cockerham responded to a complaint Lumsden's family had submitted to TDCJ about the winking case stating "[b]ased on our review of documentation, the case was justified, and no reason was found for a reversal of the original decision." (ECF No. 1-2 at 2.)

On December 18, 2019, Defendant Akwitti notified Lumsden his disciplinary case had been reviewed and, due to procedural errors, it would be overturned and removed from his record. (ECF No. 23-5 at 4.) Lumsden's conviction was overturned because the

5

supervisor who approved Blakely's initial offense was lower ranking than her. (*Id.* at 6.) The Unit was given the option of rehearing the case. (*Id.* at 19.)

Lumsden alleges that, despite his conviction being overturned in December 2019, he remained at a G4 custodial status when he filed the instant complaint February 2020. The Chief of Classification at the Hughes Unit, Leslie Harman, attested that when an offender has a disciplinary case overturned for which part of their punishment was a loss of custody, the offender must appear before the UCC to determine if his custody should be restored; until then, the offender remains at his punishment custody level. Ms. Harman further attested that, on January 24, 2020, she received an email indicating an intent to overturn Lumsden's disciplinary case and received confirmation on February 6, 2020 that his case had been officially overturned. (ECF No. 23-4 at 4.)

Lumsden appeared before the UCC on February 10 and was formally notified that his original case had been overturned. Lumsden alleges Clayton told him "since I can't have a rehearing on this case due to time expiration, I will just issue you a brand new case so I can lock you back up. I'll bury your a-- under 8 building." (No. 20-cv-138 ECF No. 1 at 2.) The winking case was then re-heard on February 14, 2020 with Martinez as the hearing officer, and Lumsden was again found guilty. He states that, after Martinez found him guilty, she said "this is what happens when you file lawsuits and buck the system." (*Id.*)

Defendant Martinez attested it was common practice to re-hear cases overturned due to procedural issues and it would be unusual for such a case not to be re-issued or re-heard. She further stated that her decision to re-issue the case was based on the Unit's

6

common practice and not based on Lumsden's grievances, lawsuits, or other complaints. (ECF No. 23-3 at 3-4.) Defendant Clayton also attested that rehearing an overturned case was common practice, and that the decision to re-hear Lumsden's case was not motivated by any of his grievances or lawsuits. (ECF No. 23-1 at 3-4.)

During the pendency of Lumsden's winking case, another offense report was filed against him on January 13, 2020, this time for being "out of place." The report states Lumsden was at the medical nursing station to receive breathing treatments, but that his medical pass had been altered and he was not authorized to be there. (ECF No. 23-6 at 4.) After reviewing his chart, the nurse in charge stated that his original pass for breathing treatments was written for January 5-12, and that the pass Lumsden presented appeared to have altered the "12" to "22." (*Id.* at 5.).

Lumsden was notified of the offense on January 15, 2020; he pleaded not guilty and claimed a sergeant in his building had given him permission to go to medical. (*Id.* at 3.) Two sergeants stated they gave Lumsden permission to go to medical. (*Id.* at 11-12.) Defendant Martinez was the hearing officer. (*Id.* at 8.) In her affidavit, Martinez acknowledged that two officers had given Lumsden permission to receive his breathing treatments but noted that it was medical who authorized offenders to be in their building. However, Lumsden's medical pass had expired, which was why she found him guilty of being out of place. Martinez also attested that the decision to find Lumsden guilty was not motivated by his grievances, lawsuits, or other complaints. (ECF No. 23-3 at 4.)

Finally, Lumsden alleges he has a bad mattress, but when he asked Blakely for a new one, she said "I don't help whiners and complainers. Live with it." (ECF No. 1 at 5.)

7

He filed two grievances complaining about the mattress in September and October 2019, as well as a special medical request he filed on November 17, 2019, wherein he states he has a fused spine, is 260 lbs., and needs a supportive mattress. (ECF No. 1-5 at 2.)

### III. Discussion & Analysis

*Summary Judgment*

On a motion for summary judgment, a court will render judgment if the evidence shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must

produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *See id.* (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## Qualified Immunity

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. The plaintiff must therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's

situation would have understood that his conduct violated that right. *See id.*; *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the right to be clearly established, the plaintiff must show that defendants had "'fair warning" that their specific actions were unconstitutional. *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011) (relevant right is not defined at high level of generality; rather, "existing precedent must have placed the statutory or constitutional question beyond debate").

In considering a qualified immunity defense, the Court must view the evidence in the light most favorable to the non-movant and draw all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### *Eleventh Amendment Immunity*

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). A federal court may, however, "enjoin a state official in his official capacity from taking future actions in furtherance of a state law that offends federal law or the federal Constitution." *Moore*, 743 F.3d at 963 (citing *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 269 (1997)). A suit against a state official in their official capacity is no different than a suit against the state itself. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994). A state's sovereign immunity under the Eleventh Amendment

may not be evaded by suing state agencies or state employees in their official capacity because such a claim is essentially against the state itself. *Id.* Accordingly, Defendants are entitled to Eleventh Amendment immunity on Lumsden's claims against them in their official capacities for monetary relief.

*Claim 1: Retaliation*

"Under the First Amendment, a prison official may not harass or retaliate against an inmate 'for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct.'" *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019). The elements of a retaliation claim are "(1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory statements that retaliation occurred are not sufficient; rather, "the inmate must produce direct evidence of motivation or, . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id.*

Lumsden claims Blakely, Clayton, Akwitti, Martinez, and Davis retaliated against him in violation of his First Amendment rights. Specifically, he alleges that, after his family member called Clayton to complain about his winter coat, Blakely retaliated by filing the winking disciplinary case against him and by failing to issue him a good mattress. Lumsden claims Martinez only found him guilty for being "out of place" in retaliation for the reversal of the winking case. Finally, he alleges that, after he filed grievances and

lawsuits, Akwitti retaliated by failing to remove Lumsden immediately from disciplinary housing in December 2019; Davis retaliated by refusing to take immediate action; and Clayton retaliated against him by re-issuing and re-hearing the winking disciplinary case despite this being contrary to TDCJ policy. (ECF No. 1 at 6-7.)

It is clearly established that a prison official "may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Lumsden, however, has failed to show that any of these defendants violated his clearly established rights. Lumsden alleges that Blakely filed the winking disciplinary case against him because his family had complained to Clayton about his winter coat. Blakely, however, attested she was not the officer who originally assigned Lumsden his 2XL coat, and that she could immediately see it was too small for him. To the extent Lumsden is arguing Blakely retaliated against him because he filed a grievance against her, this too is unsupported by the record: Blakely attested she filed the disciplinary case because of Lumsden's conduct and was not aware he had filed any grievances or lawsuits against her at the time she wrote the disciplinary case. Outside Lumsden's allegations, there is no evidence in the record showing that Blakely intended to retaliate against him by filing the winking disciplinary case. *See Woods v. Smith*, 60 F.3d at 1166 (mere conclusory statements that retaliation occurred will not withstand a summary judgment challenge).

As to Defendants Martinez and Clayton, Lumsden alleges Martinez only found him guilty for the out-of-place disciplinary case as retaliation for the reversal of his winking case, and that Clayton re-issued the winking case in February 2020 in retaliation for his

12

grievances and lawsuits. However, Martinez attested she did not learn about the reversal of Lumsden's winking case until January 24, 2020, which was two days after she found him guilty in his out-of-place disciplinary case. (ECF No. 23-3 at 3-4.) She further attested that the decision to find him guilty in either of his disciplinary hearings was not motivated by his grievances or lawsuits. Clayton also attested that the decision to re-hear Lumsden's winking case was a common practice and not motivated by any of his lawsuits or grievances. Lumsden has presented no evidence to the contrary, and as noted above, his conclusory allegations of retaliation are not sufficient to withstand summary judgment. *Woods*, 60 F.3d at 1166.

Lumsden further alleges that, in retaliation for filing lawsuits and grievances, Akwitti refused to immediately move Lumsden out of disciplinary housing when Akwitti received notice the winking case would be overturned, and Davis also failed to take immediate action. Again, these allegations are conclusory and cannot withstand summary judgment. Finally, to the extent Lumsden argues defendants retaliated against him by threatening him or verbally harassing him, verbal harassment alone does not amount to a constitutional violation. *See Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening language and gestures of a custodial Defendant do not, even if true, amount to constitutional violations"); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973) (the use of words, no matter how violent, does not comprise a § 1983 violation). Accordingly, defendants Blakely, Clayton, Martinez, Akwitti, and Davis are entitled to qualified immunity on Lumsden's retaliation claim.

*Claim 2: Due Process*

Lumsden alleges he was denied due process during the October 2019 hearing for the winking case when he did not have counsel, Martinez told him to "keep his mouth shut"; Martinez failed to acknowledge that there is no "winking" offense in TDCJ; and Martinez sentenced him to the maximum sentence. He further alleges Defendant Smith violated his due process rights by keeping him in G4 custody despite the computer recommending G3 custody.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must first establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, to claim the protections of the Due Process Clause, Lumsden must first identify a protectable liberty interest. In his motion for summary judgment, he argues he has a liberty interest in not being transferred to disciplinary housing. However, it is well-established that prisoners have no liberty interest in avoiding transfers to more adverse conditions of confinement, *see id.*, their custodial classification, *see Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999), or a 30-day loss of commissary privileges, *see Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Without a liberty interest at stake, Lumsden was not afforded the protections of the Due Process Clause during his disciplinary hearings. Accordingly, Defendants Martinez and Smith are entitled to qualified immunity on this claim.

*Claim 3: Deliberate Indifference*

In his last claim, Lumsden argues Defendants Davis, Correll, Clayton, Akwitti, Smith, and Cockerham were deliberately indifferent to his complaints of retaliation and denial of due process. Specifically, he alleges Clayton, Akwitti, and Davis failed to act when they learned Lumsden was being retaliated against; Davis has been deliberately indifferent in her supervision of subordinates; Davis, Correll, Clayton, Akwitti, and Cockerham were aware of the due process violations and did not to correct them; and all defendants were aware that his disciplinary housing was restrictive and excessively loud, but were deliberately indifferent to Lumsden's headaches, sleep deprivation, and asthma complications.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted); *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). In order to state a claim for failure to protect under § 1983, a plaintiff must demonstrate "he is incarcerated under conditions posing a substantial risk of serious harm and that the prison officials were deliberately indifferent to [the] inmate's safety." *Longoria*, 472 F.3d at 492 (citing *Farmer*, 511 U.S. at 834) (quotations omitted).

Prisoners also have a right to medical care under the Eighth Amendment. In order establish deliberate indifference regarding medical care, a plaintiff must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir.

15

2006) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)). Allegations of unsuccessful medical treatment, mere negligence, neglect, or medical malpractice do not give rise to a § 1983 action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam).

Deliberate indifference requires showing that (1) a prison official was aware of facts from which they could infer a substantial risk of serious harm exists, and (2) they drew the inference. *See Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc). "'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference.'" *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (quoting *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Lumsden alleges defendants were deliberately indifferent to his complaints of retaliation and denial of due process by officials at the Hughes Unit. The Court, however, has already granted defendants qualified immunity on these claims, and defendants cannot now be found to be deliberately indifferent to rights Lumsden failed to show were clearly established. To the extent Lumsden is alleging defendants were deliberately indifferent to his requests for a new mattress, the summary judgment evidence shows the contrary, i.e. that Lumsden received a new mattress, just one that was not to his liking. As such, he has not shown deliberate indifference to his serious medical needs. Accordingly, the Court grants Defendants' motion for summary judgment on this claim.

## IV. Conclusion

It is therefore **ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 10) is **GRANTED,** Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED,** Plaintiff's complaint is **DISMISSED WITH PREJUDICE**, and Defendants' Second Motion for Protective Order (ECF No. 37) is **DISMISSED AS MOOT**.

It is further **ORDERED** that all other pending motions are **DISMISSED**.

**SIGNED** on February 12, 2021

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE